# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MIR WAIS, ROOZIA SAHIBZADA, and SHIELD HOMES LLC,

Appellants/Defendants-Below,

v.

ASHLEY B. THOMPSON

Appellee/Plaintiff-Below.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N22A-08-003 CLS

Date Submitted: January 20, 2023
Date Decided: March 24, 2023

*On Appellants' Appeal from the Order of the Court of Common Pleas.*
**AFFIRMED.**

## OPINION

Chandra J. Williams, Esquire, Rhodunda, Williams & Kondraschow, Wilmington, Delaware, 19803, Attorney for Appellants/Defendants-Below Mir Wais, Roozia Sahibzada and Shield Homes LLC.

Steven D. Rosen, Esquire, The Rosen Law Firm, LLC, Wilmington, Delaware, 19809, Attorney for Appellee/Plaintiff-Below Ashley B. Thompson.

**SCOTT, J.**

1

## INTRODUCTION

Before the Court is Appellants/Defendants-Below Mir Wais, Roozia Sahibzada and Shield Homes LLC. ("Appellants") appeal from the decision of the Court of Common Pleas ("CCP") Trial Decision, finding in favor of Appellee/Plaintiff-Below Ashley B. Thompson ("Ms. Thompson") regarding a breach of contract claim, and Attorney's Fees Award, awarding Ms. Thompson's counsel $42,319.59. The Court has reviewed the parties' submissions and the record below. For the following reasons, the decisions of the Court of Common Pleas are **AFFIRMED.**

## FACTS

This claim arises out of the purchase of home. On June 9, 2017, Ms. Thompson and Appellant Shield Homes, LLC entered into a purchase agreement for a property located at 1015 San Remo Court, Bear, Delaware (the "Property"). The agreement included an attorney's fees and litigation costs shifting provision. Shield Homes was managed and represented by Appellant Mir Wais ("Mr.Wais"), a licensed Delaware realtor. Mr. Wais, along with his wife Roozia Sahibzada ("Ms. Sahibzada") are the sole members of Shield Homes.

On June 19, 2017, a home inspector inspected the Property and noted the roof was in poor condition. It was recommended that a licensed roofing contractor evaluate and repair or replace it, as necessary.

2

On June 23, 2017, Thompson and Shield Homes entered into an addendum to the purchase agreement, where both parties agreed that "[a] licensed roofing contractor should be called in to make further evaluation and to repair or replace as needed." On June 28, 2017, MW Roofing, LLC, a licensed roofing contractor, performed an evaluation of the roof and found that the roof was not in repairable condition so was required to be replaced for $4,510. That same day, Ms. Thompson's real estate agent emailed Mr. Wais, attaching the roof estimate from MW Roofing. Mr. Wais replied on the same day stating, "I'm totally rejecting the roof replacement – talk to your client and tell her not to order appraisal and loose [sic] money if she wants to walk away." The invoice, dated July 15, 2017, showing that Shield Home paid $1,990 to Gul Construction LLC for the repair of the roof was provided to the Court of Common Pleas by Defendants.

On July 27, 2017, Ms. Thompson and her real estate agent conducted a walkthrough of the Property and found a leak from the skylight in the master bedroom. That same day, Ms. Thompson's agent emailed Wais and requested that a licensed roofing contractor inspect and repair the roof and the skylight. On July 28, 2017, MW Roofing inspected the Property and found that no work had been performed since its inspection on June 28, 2017. On July 29, 2017, Thompson's agent emailed Mr. Wais and informed him the fact that no work was done, along with two suggestions—either Shield Homes (1) "complete the required repairs that

3

are specified in the repair addendum using [Gul Construction]" or (2) "pay to have the roof replaced." Mr. Wais replied on the same day stating, "I'm not going to replace the roof. But fixing the issue is my responsibility and I'll use either your company or some other company to address it."

On July 30, 2017, Mr. Wais emailed Ms. Thompson's agent, noting that the roof issue had been addressed with an attachment of the $700 invoice from Homepros, Inc. On July 31, 2017, the parties proceeded with the settlement.

In August 2017, Ms. Thompson testified at trial she experienced the roof leaking after it was rained upon. However, the CCP Decision found sometime in October 2017 after settlement, Ms. Thompson discovered the room was still leaking, requiring her to seek MW Roofing's services. Regardless of any discrepancy regarding when the leaking occurred after settlement, Ms. Thompson hired MW Roofing in October 2017. MW Roofing determined the roof needed replacement. The cost of replacement was $7,538.04.

## PROCEDURAL BACKGROUND

On October 8, 2019, Ms. Thompson filed a Complaint against Appellants with the Court of Common Pleas, alleging that (1) Appellants breached their duty to professionally repair or replace the roof of the Property; and (2) Appellants falsely represented material facts to induce Thompson to proceed with the settlement of the Property. On February 24, 2022, the Court of Common Pleas held a trial. During

4

the trial, the court dismissed Ms. Sahibzada as the court found that she lacked involvement with the purchase agreement between Ms. Thompson and Shield Homes. On April 25, 2022, the court issued a decision after trial, finding in favor of Ms. Thompson on the first claim—breach of contractual duty—while finding against Ms. Thompson on the fraudulent inducement or statutory fraud claim.

On May 12, 2022, Ms. Thompson's attorney submitted his application for attorney's fees, requesting $40,725.00 in attorney's fees and litigation costs and pre- and post-judgment interest, totaling $43,359.59 to the court. Appellants did not dispute that Ms. Thompson's attorney had a contractual right to collect attorney's fees and litigation costs based on the contract. However, Appellants disputed the amount Ms. Thompson's attorney requested. Appellants asserted that the attorney's fee of $40,725.00 for a one-day trial of a simple contractual matter is unreasonable and should be denied. On July 29, 2022, the court issued a decision on attorney's fees, awarding Ms. Thompson's attorney reasonable attorney's fees in the amount of $39,685.00, plus litigation fees and pre- and post-judgment interest rate, totaling $42,319.59.

On August 11, 2022, Appellants appealed to the Superior Court the Court of Common Pleas' (1) decision after trial and (2) decision on attorney fees. On August 17, 2022, Ms. Thompson filed Motions to Dismiss (1) Appellant's appeal and (2) Appellant's Appeal of Nonresident Appellant Mr. Wais. On October 4, 2022, this

5

Court heard the oral arguments regarding Motions to Dismiss from both parties and ruled that the Motion to Dismiss Appellant's Appeal was **DENIED** and the Motion to Dismiss Appeal of Nonresident Appellant Mr. Wais became **MOOT**. Appellants filed their Opening Brief on October 24, 2022. Appellee filed her Response on November 11, 2022. Appellants filed their Reply Brief on November 30, 2022. This matter was assigned on January 20, 2023.

## PARTIES' CONTENTIONS

### A. *Regarding Mr. Wais' Liability*

The parties dispute whether the trial court erred by finding Mr. Wais liable to Ms. Thompson for breach of contract. Appellants argue that the CCP erred by finding Mr. Wais liable for breach of contract as Appellant Wais is not a party to the contract. Appellants argue that this Court must review de novo the CCP finding that Mr. Wais is liable to Ms. Thompson because it is a question of law.

Appellee responded, citing Delaware Supreme Court Rule 8 regarding Appellants failure to fairly present the contract privity argument before the CCP, and, thus, should be precluded from bringing before this Court. Further, Ms. Thompson argues the CCP determined through testimony and evidence that Mr. Wais "affirmatively and expressly" took personal responsibility for the contract.

In the Reply Brief, Appellants refute Ms. Thompson's arguments, stating that Mr. Wais preserved his position for appeal that there was no contractual privity

6

between Wais as an individual and Ms. Thompson, and Ms. Thompson failed to establish privity between herself and Mr. Wais.

### B. *Regarding Attorney's Fee*

The parties also dispute the applicable standard of review for this Court's review of the lower court's decision on attorney's fees.  Appellants argue that "[i]n assessing whether attorneys awarded are disproportionate or in violation of the applicable legal principles, this Court must review the legal principles applied de novo."   Appellants enumerate eight factors listed in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct ("DRPC") and suggest that "the Court's de novo review of [Ms. Thompson's] request for attorneys' fees will result in a finding that the fees are not reasonable pursuant to DRPC 1.5."

Ms. Thompson argues that Appellants "inappropriately" misstate the standard of review, and that the correct standard of review for the Superior Court's review of the CCP's decision on awarding attorney's fees is the abuse of discretion. In applying that standard, Ms. Thompson asserts that the CCP did not abuse its discretion.

### STANDARD OF REVIEW

Addressing appeals from the Court of Common Pleas, the Superior Court sits as an intermediate Appellate Court.[1]  As a rule, issues not raised in the trial Court

---

[1] *State v. Richards*, 1998 WL 732960.

shall not be heard on appeal.[2]  The Court's role is to "correct errors of law and to review the factual findings of the Court below to determine if they are sufficiently supported by the record and are the product of an orderly and logical deductive process."[3]  Appellate Courts are bound by findings of fact made by the Trial Court that are supported by substantial evidence on the record, and are the product of an orderly and logically deductive process.[4]  Superior Court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions.[5]  Errors of law are reviewed de novo.[6]  Errors of law include "errors in formulating or applying legal precepts."[7]

Additionally, the CCP, like this Court, has discretion to determine what amount of fees is reasonable.[8]  As such, this Court reviews an award of attorney's fees under an exception to the American Rule to determine if the trial court abused its discretion in awarding such fees, like the Supreme Court would apply if assessing

---

[2] *Wilmington Tr. Co. v. Conner*, 415 A.2d 773, 781 (Del. 1980).
[3] *Tekstrom, Inc. v. Savla*, 2006 WL 2338050, at *4 (Del. Super. 2006), *aff'd*, 918 A.2d 1171 (Del. 2007).
[4] *Id. citing*, *Shahan v. Landing*, 643 A.2d 1357 (Del. 1994); *Downs v. State*, 570 A.2d 1142, 1144 (Del. 1990).
[5] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[6] *Downs v. State*, 570 A.2d 1142, 1144 (Del. 1990).
[7] *Id.*
[8] *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1089 (Del. 2006).

this Court's award of fees.[9] "When an act of judicial discretion is under review, the reviewing court may not substitute its own notions for what is right for those of the trial judge, if his judgment was based on conscience and reason, as opposed to capriciousness or arbitrariness."[10]

## ANALYSIS

### A. Substantial Evidence Supports the Trial Court's Factual Findings Concerning Mr. Wais Voluntarily Accepted the Responsibility to Fix the Roof.

Appellants fairly presented to the trial court questions of whether Mr. Wais had privity to the Contract between Shield Homes and Appellee. In their Answer to Ms. Thompson's Complaint, Appellants noted that: "Denied that Wais or Sahibzada had a contractual obligation to Plaintiff." In the Civil Case Management Order, Appellants listed the issues, one of which was: "whether Defendants Mir Wais and Roozia Sahibzada should be dismissed as defendants." In the Opening Statement during the trial, counsel for Appellants stated that: "I will note that this contract is only between Ms. Thompson and Shield Homes. The personal liability asserted against both individual defendants should be dismissed in whole . . . ."

---

[9] *Dover*, 902 A.2d at 1088–89 (citing *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 210 (Del.2005)).
[10] *Chavin v. Cope*, 243 A.2d 694, 695 (Del.1968) (citing *Pitts and Coker v. White*, 109 A.2d 786 (Del.1954)).

9

By raising the issues in their answers, the Civil Case Management Order, and the Opening Statement, Appellants fairly presented to the trial court questions of whether Mr. Wais was a party to the Sales Contract and was personally liable to Ms. Thompson for not fixing the roof. As such, the Court will review Appellants' claims on the privity issue.

In reviewing the Appellants' argument, the Court finds the CCP decision was based on substantial evidence and therefore stands. Delaware law generally shields individual members of a limited liability company from liabilities of the limited liability company under 6 Del. C. §18-303(a). However, a member or manager may assume debts, obligations, or liabilities of the limited liability company if he agrees to be obligated for those personally under 6 Del. C. §18-303(b).

Here, the CCP correctly recognized the legal principles regarding an LLC member's or manager's personal liability. Further, the court factually found that Mr. Wais, a member (principal) and a manager of Shield Homes, personally assumed Shield Homes' contractual obligation of fixing the roof after hearing Mr. Wais' testimony and reading his email sent to Ms. Thompson's agent.

Unlike Thomas, the caselaw relied upon by Appellants in attempting to disprove Ms. Wais voluntarily accepted responsibility, where the only piece of evidence for showing that the defendant assumed the LLC's liability was, at times,

using a pronoun "her" instead of "it" in the contract itself[11], in the present case, substantial evidence supporting the trial court's factual finding that Mr. Wais voluntarily accepted such responsibility when Mr. Wais said multiple times, through emails and testimony, that fixing the roof was his responsibility.

**B. The CCP Properly Applied the Applicable Legal Principles in Awarding the Amount of Attorneys' Fees and Other Costs and Did Not Abuse Its Discretion by Awarding Attorneys' Fees and Costs.**

This Court must apply the abuse of discretion standard when assessing the CCP's award of $41,139.59 for attorney's fees and other costs as the determination of whether attorney's fees requested falls within the court's discretion.

CCP correctly noted that it has discretion to award a reasonable amount of attorney's fees and costs, and properly relied on the Delaware Lawyers' Rules of Professional Conduct, Rule 1.5.

Under the abuse of discretion standard, the trial court did not abuse its discretion when it carefully considered every factor listed in Rule 1.5(a) and some other factors including whether the number of hours charged are "excessive, redundant, duplicative or otherwise unnecessary."

Appellants fail to show that the trial court did not assess the reasonableness of the attorney's fees and costs or that the trial court's decision was capricious or arbitrary. As the Supreme Court in *Mahani* explained, the amount of the attorney's

---

[11] *Thomas v. Hobbs*, 2005 WL 1653947 (Del. Super. Apr. 27, 2005).

11

fees and costs can be higher than the damages awarded.[12]  Moreover, the Court of Common Pleas assessed the attorney's fees by legal services purchased by those fees, not by the degree of success achieved in the litigation.  Therefore, there is no abuse of discretion present in awarding attorneys' fees and costs in the amount of $42,319.59.

## CONCLUSION

For the aforementioned reasons, the decision of the Court of Common Pleas is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ **Calvin L. Scott**
**Judge Calvin L. Scott, Jr.**

---

[12] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 248 n.23 (Del. 2007).